Jason H. Wilson (Bar No. 140269)
jwilson@willenken.com
Ashley L. Kirk (Bar No. 291012)
akirk@willenken.com
WILLENKEN LLP
707 Wilshire Blvd., Suite 4100
Los Angeles, California 90017
Telephone:  (213) 955-9240
Facsimile:  (213) 955-9250

Attorneys for Plaintiff
LERMAN CONTAINER CORP.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LERMAN CONTAINER CORP. | Case No.: 2:25-cv-06321 |
| Plaintiff, | **COMPLAINT** |
| v. | |
| A&A GLOBAL IMPORTS, LLC, | **JURY DEMAND** |
| Defendant. | **REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL** |

Plaintiff, LERMAN CONTAINER CORP., d/b/a eBottles.com ("eBottles" or "Plaintiff"), by and through its undersigned counsel, files this complaint against Defendant, A&A GLOBAL IMPORTS, LLC, formerly and currently d/b/a A&A GLOBAL IMPORTS, INC., GAMUT PACKAGING and MarijuanaPackaging.com ("A&A" or "Defendant"), and alleges as follows:

## **NATURE OF THE ACTION**

1.     This is an action for breach of certain contractual obligations in a supply and distribution agreement (the "Agreement") that obligates the Defendant to purchase certain jars it offers for sale from Plaintiff, and for patent infringement under 35 U.S.C. § 271 for the sale of jars that were not purchased from Plaintiff and which infringe Plaintiff's patents.

2.     Plaintiff is a leading designer, manufacturer and distributor of packaging solutions for over 40 years, and a leader in cannabis packaging since 2014. Plaintiff offers an unrivaled variety of child resistant packaging conducting business with nine of the top ten companies licensed in multiple U.S. states to produce cannabis products, and selling over 300 million units of its packaging products per year. Plaintiff's products are protected by patents.

3.     Among the products designed, patented, marketed, and sold by Plaintiff for the cannabis industry are its 5ml and 9ml EB Thick Wall Jars (collectively, the "Thick Wall Jars). The design of the 9ml EB Thick Wall Jar is protected by United States Design Patent Nos. D781,151 S (the "'151 Patent") and the design of the 5ml EB Thick Wall Jar is protected by the D797,559 S (the "'559 Patent") (collectively the "Plaintiff Patents").

4.     The Thick Wall Jars have a novel, symmetrical design and are commonly used to store concentrates and other materials. As a result of the novel design of the Thick Wall Jars, and the extensive marketing and advertising of the Thick Wall Jars by Plaintiff, the designs of the Thick Wall Jars are well known and recognized within the cannabis packaging industry.

5.     In 2016 the parties entered into the Agreement under which Plaintiff would make its innovative (and at that time patent pending) Thick Wall Jars available for purchase by Defendant at a discount, thereby allowing Defendant to resell the Thick Wall Jars at competitive prices. Defendant agreed to fill customer orders placed with Defendant for the Thick Wall Jars with jars purchased from

Plaintiff and not to fill the orders with jars obtained from other sources.  For several years, the Plaintiff and the Defendant operated under the terms of the Agreement.

6.      At least as early as June 2022, Defendant began filling orders Defendant received for Plaintiff's Thick Wall Jars with jars that were substantially similar to the patented Thick Wall Jars (the "Infringing Jars") but were not supplied to Defendant by Plaintiff.  Filling of orders for Plaintiff's Thick Wall Jars with the Infringing Jars was not authorized by the Plaintiff and violated the terms of the Agreement.

7.      Additionally, Defendant's distribution, marketing, and sales of the Infringing Jars constitutes patent infringement under 35 U.S.C. § 271.

8.      In this action Plaintiff seeks to: (1) enjoin Defendant from selling the Infringing Jars; and (2) receive compensation for Defendant's sales of the Infringing Jars in violation of the Agreement and in contravention of Plaintiff's patent rights.

**THE PARTIES**

9.      Plaintiff, Lerman Container Corp., is a corporation organized under the laws of the State of Florida, with its principal place of business of 4286 West Main Street, Jupiter, Florida 33458. Lerman Container Corp. is doing business as eBottles.com.

10.      Upon information and belief, Defendant, A&A Global Imports, LLC, is a limited liability corporation duly organized and existing under the laws of California, with a place of business located at 1801 E. 41st Street, Vernon, California, 90058. This action arises out of this business.

11.      Upon information and belief, A&A Global Imports, Inc. was a corporation duly organized and existing in California with a place of business at 1801 E. 41st Street, Vernon, California, 90058. Upon information and belief, at or around May 4, 2021, A&A Global Imports, Inc. was converted into A&A Global

Imports, LLC, and A&A Global Imports, LLC is the successor in interest to A&A
Global Imports, Inc.  On information and belief, Defendant still conducts some
business d/b/a A&A Global Imports, Inc.  his action arises out of this business of
A&A Global Imports, LLC and its predecessor in interest A&A Global Imports,
Inv.

12.    On information and belief, Defendant sells its products, including the
Infringing Jars, through affiliates and/or direct sales and on multiple websites.
Upon information and belief, Defendant has done, or is doing, business through its
websites, including marijuanapackaging.com, gamutpackaging.com,
420packaging.com, smokecones.com, and greenearthpackaging.com (collectively,
the "A&A Websites"). This action arises out of Defendant's marketing and sale of
the Infringing Jars via its affiliates and/or the A&A Websites.

## JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction over the patent claims in
this action pursuant to 28 U.S.C. §§ 1331 and 1338 as these claims arises under the
patent laws of the United States.

14.    This court has subject matter jurisdiction over the contract claims
pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and
the amount in controversy exceeds $75,000.

15.    On information and belief, Defendant maintains its headquarters and
has a regular and established physical place of business in this District.

16.    On information and belief, Defendant has committed acts of patent
infringement in this District.

17.    Venue is properly established in this Court pursuant to 28 U.S.C. §§
1391(b)-(c), and § 1400, because Defendant is subject to personal jurisdiction in
this District, and because it has committed acts of patent infringement and breach
of contract in this District. Defendant also has a regular and established place of
business in this District.

1

## FACTUAL ALLEGATIONS

2

### THE THICK WALL JARS – THE PRODUCTS AT ISSUE

3      18.    Since 2014, Plaintiff has been a leading supplier of packaging

4   solutions for the cannabis industry. As a result of its innovative designs, and

5   reputation for quality products, Plaintiff's packaging products are considered

6   premium products in the packaging industry. As such, Plaintiff can collect

7   premium pricing for its innovative packaging solutions.

8      19.     Plaintiff products have been featured in publications and podcasts

9   such as The Cannabis Time, Packaging Digest, Ganjapreneur, and the Benzinga

10  podcast. Plaintiff also spends extensive money advertising its products, and

11  regularly has booths in multiple trade shows throughout the year, including the

12  industry's largest show, MJBiz in Las Vegas, and regional shows throughout the

13  country.

14     20.    In early 2016, Plaintiff introduced a new concentrate container for use

15  in the cannabis industry, its Thick Wall Jars. The Thick Wall Jars were extremely

16  popular, and Plaintiff was able to offer the Thick Wall Jars to its customers at a

17  premium price. Since 2016, Plaintiff has sold about 100 million units of its Thick

18  Wall Jars. Pictures of clear Thick Wall Jars sold by the Plaintiff are below:

19

20

21

22

23

24

25

| Plaintiff's 9mm Thick Wall Jar | Plaintiff's 5mm Thick Wall Jar |
| --- | --- |
|  | |

26     21.    Because of their innovative design, Plaintiff was granted the Plaintiff

27  Patents for the Thick Wall Jars. The design of the 9ml Thick Wall Jar is protected

28  by United States Design Patent D781,151 S (the "'151 Patent"), which issued on

March 14, 2017. The design of the 5ml Thick Wall Jar is protected by United States Design Patent D797,559 S (the "'559 Patent"), which issued on September 19, 2017.

## THE AGREEMENT BETWEEN PLAINTIFF AND DEFENDANT

22.     Shortly after the Thick Wall Jars were introduced to the container marketplace in 2016, Defendant approached Plaintiff asking Plaintiff to supply Defendant with the Thick Wall Jars for resale.

23.     Plaintiff gave Defendant samples of the Thick Wall Jars and, over the next few months, the Plaintiff and Defendant discussed pricing and other conditions under which Plaintiff would sell the Thick Wall Jars to Defendant. Among Plaintiff's conditions were that Defendant would exclusively purchase the Thick Wall Jars from Plaintiff and Defendant would not seek another supplier for jars with a similar design.

24.     During the negotiations with Plaintiff for the supply of the Thick Wall Jars, Defendant started selling 5ml and 9ml jars that were nearly identical to the Thick Wall Jars, which at that time were the subject of a pending design patent application. On September 2, 2016, Plaintiff sent Defendant a cease-and-desist letter asserting, *inter alia,* that the jars Defendant had started to sell would infringe Plaintiff's design patent rights once its pending patent application issued.

25.     In response to the cease-and-desist letter from Plaintiff, on or about September 30, 2016, Plaintiff and Defendant entered into an Agreement (**Exhibit A**) that included terms for the supply of Thick Wall Jars to Defendant.

26.     Under the terms of the Agreement, Plaintiff agreed to ████████████
████████████████████████████████████████████████████". The Agreement allowed A&A to resell the jars it got from Plaintiff.

27.     ████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████rts

1 ██████████████████████████████████████████████

2 ████████████████████████████████████████████

3 ████████████████████████████ (Agreement, Par. 2.1(b)).

4     28.    Importantly, the Agreement further stated that ████████████

5 █████████████████████████████████████████████

6 (Agreement, Par. 2.1.(d)).

7     29.    ███████████████████████████████████████

8 ████████████████████████████████████

9 █████████████████████████████████████████

10 ████████████████████████████ Defendant

11 informed Plaintiff that the part numbers Defendant assigned to the Thick Wall Jar

12 products were EBJCR5 for 5ml jars and EBJCR9 for 9ml jars.

13     30.    ██████████████████████████████████

14 █████████████████████████████████████████

15 ██████████████████████████████████████████

16 ███████████████████████████

17     31.    From 2017 until 2021, Plaintiff provided Defendant with more than

18 4.4 million 9ml Thick Wall Jars and more than 5 million 5ml Thick Wall Jars.

19     32.    Shortly after the '151 Patent had issued in March 2017, Plaintiff

20 began marking the bottom of its Thick Wall Jars, including those sold to the

21 Defendant under the terms of the Agreement, with a patent number. Therefore, the

22 majority of the Thick Wall Jars sold to the Defendant were marked with Plaintiff's

23 patent.

24     **DEFENDANT VIOLATES THE TERMS OF THE AGREEMENT**

25     33.    By 2022, the anticipated yearly volume of sales for Thick Wall Jars

26 purchased by Defendant under the terms of the Agreement declined significantly

27 relative to Defendant's purchase volumes from prior years.

28

34.     Defendant still listed the Thick Wall Jars on the A&A Websites using the "EBJ" part numbers in 2022.

35.     After Defendant's purchase volume of the Thick Wall Jars remained significantly lower than expected based on overall market demand for Plaintiff's Thick Wall Jars, Plaintiff became concerned that the Defendant was selling knockoffs of the Thick Wall Jars in place of Thick Wall Jars to be supplied to the Defendant by Plaintiff under the terms of the Agreement.

36.     On June 28, 2022, Plaintiff's Regional Manager visited the business location of one of Plaintiff's regular customers whom Plaintiff knew had been purchasing Thick Wall Jars from the Defendant. Plaintiff instructed its regional sales manager to inquire about what items the customer had purchased from the Defendant to determine if the Defendant was selling knockoffs of the Thick Wall Jars.

37.     At the June 28, 2022 visit the sales manager discovered cases of jars resembling the Thick Wall Jars. The cases were labeled with the product codes EBJCR5 and EBJCR9, and the customer confirmed that these jars were supplied to them by the Defendant. However, these jars at the customer site did not include Plaintiff's patent marking, which indicated that they were not Plaintiff's Thick Wall Jars, but instead were knock off jars, i.e., the Infringing Jars. Pictures showing the product numbers and Infringing Jars found in the customer's warehouse are attached as **Exhibit B**, and shown below:

//

//

//

//

//

//

//





(EBJCR5 Jar provided to
Customer by Defendant)

(EBJCR5 Box)



(EBJCR9 Jar provided to
Customer by Defendant)

(EBJCR9 Box)

38.     Plaintiff did not produce or supply the Infringing Jars found in the
customer's warehouse to Defendant. Plaintiff's customer confirmed that the price
that Defendant was charging for the Infringing Jars was lower than the price
Plaintiff charged for its Thick Wall Jars, which indicated that Defendant was
ordering the Infringing Jars at a significantly reduced price from what it paid for
the Thick Wall Jars from Plaintiff.

39.     On July 5, 2022, Plaintiff sent Defendant correspondence regarding
the Infringing Jars found at in its customer's warehouse. Specifically, Plaintiff told
Defendant to cease selling the Infringing Jars. This letter is attached as **Exhibit C**.

40.     In a correspondence dated July 12, 2022, Defendant characterized the distribution of the Infringing Jars as a "misunderstanding". Defendant agreed that it would cease selling the Infringing Jars, would provide Plaintiff with its projected demand for Thick Wall Jars, and would order Thick Wall Jars from Plaintiff in the future. This letter is attached as **Exhibit D**.

41.     Defendant failed to order additional Thick Wall Jars. Upon information and belief, Defendant was having financial problems during this time, and Plaintiff believed that Defendant's failure to order more Thick Wall Jars was due to its financial problems.

42.     However, by October 2023, Plaintiff had received complaints from several customers that Defendant was selling the Thick Wall Jars below the prices charged by Plaintiff's own distributors, thereby undercutting Plaintiff's pricing for its Thick Wall Jars in the marketplace.

43.     In response to customer complaints, on October 16, 2023, Plaintiff sent the Defendant correspondence stating Defendants was "selling knock offs at well below [Plaintiff's] published prices" and demanded that Defendant "stop now!" **Exhibit E**. Defendant did not respond to Plaintiff's demand.

44.     In January 2024, the management of the Defendant changed. Plaintiff sent the new management another letter demanding that the Defendant cease selling the Infringing Jars.

45.     The Defendant did not stop selling the Infringing Jars in response to Plaintiff's January 2024 demand. Instead, Defendant challenged the validity of Plaintiff's '151 Patent with the United States Patent and Trademark Office ("USPTO"). Defendant's validity challenge was not successful, but it delayed Plaintiff in bringing this Action.

46.     Indeed, negotiations regarding Defendant's breach of the Agreement have been contentious, and at no time could Defendant have reasonably, subjectively, believed that its continued sales of the Infringing Jars were done with

1    Plaintiff's permission. At no time during the negotiations with Defendant regarding

2    its breach of the Agreement were there periods of silence such that Defendant

3    could have reasonably, subjectively inferred it had permission to sell the Infringing

4    Jars.

5         47.    Despite the terms of the Agreement, Defendant's knowledge of the

6    Patents, and Defendant's knowledge it is selling the Infringing Jars without the

7    permission of Plaintiff, the Defendant continues to offer the EBJCR5 and EBJCR9

8    Thick Wall Jars for sale on the A&A Websites. In response to orders for the

9    EBJCR5 and EBJCR9 Thick Wall Jars placed through the A&A Websites, the

10    Defendant supplied and continues to supply Infringing Jars instead of the Thick

11    Wall Jars produced by the Plaintiff.

12         48.    The Infringing Jars shipped by the Defendant in response to orders

13    placed on the A&A websites are clearly not the Thick Wall Jars sold to the

14    Defendant by Plaintiff.  For example, the jars shipped by the Defendant did not

15    include Plaintiff's patent marking, which all Thick Wall Jars sold to the Defendant

16    include. Photos of the Infringing Jars, which have no patent marking, in

17    comparison with the Thick Wall Jars are below:



| Bottom of Thick Wall Jar | | Bottom of 9ml Infringing Jar from Defendant | Bottom of 5ml Infringing Jar from Defendant |

27         49.    But for the Defendant's breach of its obligations to Plaintiff under the

28    Agreement, orders for EBJCR5 and EBJCR9 jars placed with the Defendant, and

filled with Infringing Jars, would have instead been filled by the Defendant with Plaintiff's Thick Wall Jars.

50.     Through the Defendant's willful and bad faith acts of filling orders for EBJCR5 and EBJCR9 Thick Wall Jars with the Infringing Jars, Plaintiff was prevented from receiving the benefits it should have under the Agreement.

51.     Plaintiff has suffered damages from the Defendant's breach of the Agreement. Plaintiff made certain investments in specialized tooling to fulfill orders from the Defendant, and this tooling cannot be used for its other customers. Plaintiff has also lost sales to Defendant.

**DEFENDANT VIOLATED THE AGREEMENT TERMS WITH FULL KNOWLEDGE OF PLAINTIFF'S PATENTS**

52.     At all times during the term of the Agreement, Defendant was aware that the Thick Wall Jars were patented or had a patent application pending for the design of the Thick Wall Jars.

53.     The Defendant became aware of Plaintiff's '151 Patent at least as early as January 5, 2017, when Plaintiff informed the Defendant that the underlying patent application for the '151 Patent was allowed. Moreover, Defendant recognized the importance of the '151 Patent, and indicated Defendant would "be on the look out on who is [planning] on replicating [the Thick Wall Jar]". **Exhibit F**.

54.     Defendant also had constructive notice of the Plaintiff's '151 Patent as early as 2017 when Plaintiff began continuously marking its Thick Wall Jars with the patent number embossed on the base of the jar.

55.     Since shortly after the '151 and '559 Patents issued, Plaintiff has prominently and continuously given notice of the '151 Patent and the '559 Patent on the ebottles.com website product pages for the Thick Wall Jars.

56.     In addition to constructive notice of Plaintiff's Patents, Plaintiff received actual notice of its infringement of the '151 Patent and the '559 Patent.

For example, on February 22, 2024, shortly after Defendant's long-time CEO was replaced, Plaintiff sent the new CEO at Defendant copies of the '151 and '559 patents, identified the Infringing Jars, and told Defendant to stop selling Infringing Jars immediately. **Exhibit G**. In addition, over the course of the Agreement, Plaintiff referred to its "patented" 5ml and 9ml glass concentrate jars in communication with Defendant, and specifically when issues of Defendant selling infringing jars became an issue.

57.     After Defendant received notice of the patents, Defendant continued to distribute the Infringing Jars, including continuing to fill orders placed with Defendant for the 5ml and 9ml Thick Wall Jars with the Infringing Jars.

58.     Between February 2024 and June 2024, Plaintiff tried to reach a business agreement with Defendant that would include Defendant ceasing sales of the Infringing Jars. Rather than stop selling the Infringing Jars, on July 1, 2024, Defendant instead filed a petition for Inter Partes Review ("IPR") to challenge the validity of the '151 Patent.  (IPR2024-01138). On January 22, 2025, the Patent Trial and Appeal Board ("PTAB") denied the Defendant's Petition. A courtesy copy of the PTAB decision is attached as **Exhibit H**.

59.     Defendant therefore undertook and continues its infringing actions despite an objectively high likelihood that such activities infringed the Plaintiff's Patents, which were duly issued by the USPTO, and are presumed valid. Defendant could not reasonably, subjectively believe that its actions do not constitute infringement of the Plaintiff's Patents. Nor could Defendant reasonably, subjectively believe that the Plaintiff's Patents are invalid, as is evident from the failure of Defendant to have an IPR instituted against the '151 Patent. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Defendant has continued its infringing activities. As such, Defendant willfully infringes the Plaintiff's Patents.

//

## COUNT I

### (INFRINGEMENT OF THE '151 PATENT)

60.     Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 59 as if fully set forth herein.

61.     On March 14, 2017, the USPTO duly and lawfully issued United States Design Patent No. D781,151 S entitled "JAR". A true and correct copy of the '151 Patent is attached hereto as **Exhibit I**.

62.     Since the issuance of the '151 Patent in 2017, Plaintiff has successfully defended challenges to the validity of the '151 Patent multiple times. On February 11, 2019, an anonymous party submitted a request for *Ex Parte* Reexamination of the '151 Patent to the USPTO. The Ex Parte Reexamination Certificate No. U.S. D781,151C1 was issued on Nov. 30, 2021, affirming the validity of the '151 Patent. A copy of the Reexamination Certificate is attached hereto as **Exhibit J**. As mentioned above, Defendant also filed an IPR challenging the validity of the '151 Patent, which was denied by the PTAB. Therefore, the '151 Patent is valid and enforceable.

63.     Plaintiff is the exclusive owner of all right, title, and interest in the '151 Patent, including the exclusive right to recover for past and future infringement.

64.     Exemplary figures from the '151 Patent are shown below:

//
//
//
//
//
//
//
//



65.     The 9ml Thick Wall Jar has been and is offered for sale by Defendant
on the Defendant's Websites under Defendant's part number EBJCR9 and using
pictures ███████████████████████████████████████████
█████████████ .

66.     No later than June 28, 2022, without Plaintiff's authorization or
permission, Defendant filled orders it received for the 9ml Thick Wall Jar with 9ml
Infringing Jars. The 9ml Infringing Jars from Defendant are virtually identical to
Plaintiff's patented 9ml Thick Wall Jar, and the embodiment of the '151 Patent, as
shown below:



FIG. 2

67.     The design of the Infringing Jar is substantially the same as the design claimed in the '151 Patent such that an ordinary observer would be deceived into thinking the 9ml Infringing Jar is the jar depicted in the '151 Patent.

68.     Defendant is now, and has been, directly infringing the '151 Patent in this District and elsewhere in the United States by, amongst other things, selling, offering to sell, making, importing, or using the 9ml Infringing Jar.

69.     Defendant has been on notice of its infringement of the '151 Patent since, at the latest February 22, 2024.

70.     Defendant undertook and continues its infringing actions despite an objectively high likelihood that such activities infringed the '151 Patent, which was duly issued by the USPTO, and is presumed valid. Defendant could not reasonably, subjectively believe that its actions do not constitute infringement of the '151 Patent. Nor could Defendant reasonably, subjectively believe that the Plaintiff's the '151 Patent was invalid, as is evident from the failure of Defendant to have an IPR instituted against the '151 Patent. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Defendant have continued its infringing activities. As such, Defendant willfully infringes the Plaintiff's '151 Patent.

71.     As a direct and proximate result of its infringement of the '151 Patent, Plaintiff has been damaged, and Defendant has derived and received gains, profits, and advantages in an amount yet to be determined.

72.    Pursuant to 35 U.S.C. § 284, Plaintiff is entitled to damages for Defendant's infringing acts of no less than a reasonably royalty and is entitled to treble damages for willful infringement because this is an exceptional case.

73.    Pursuant to 35 U.S.C. § 289, Plaintiff is entitled to Defendant's total profits from Defendant's infringing sales.

74.    Pursuant to 35 U.S.C. § 285, Plaintiff is entitled to reasonable attorneys' fees.

75.    The infringement of the '151 Patent by Defendant has caused and will continue to cause Plaintiff irreparable harm unless preliminarily and permanently enjoined by the Court. Plaintiff has no adequate remedy at law.

<u>**COUNT II**</u>

**(INFRINGEMENT OF THE '559 PATENT)**

76.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 75 as if fully set forth herein.

77.    On September 19, 2017, the United States Patent and Trademark Office duly and lawfully issued United States Design Patent No. D791,559, entitled "JAR". A true and correct copy of the '559 Patent is attached hereto as **Exhibit K**. The '151 Patent is a divisional patent of the '151 Patent.

78.    Plaintiff is the exclusive owner of all right, title, and interest in the '559 Patent.

79.    Exemplary figures from the '559 Patent are shown below:

//

//

//

//

//

//

//

**'559 Patent**

FIG. 1

FIG. 2

80. Defendant has imported, offered for sale, sold and is continuing to import, offer for sale, and sell in this judicial district and elsewhere throughout the United States, 5ml Infringing Jars that are virtually identical to the patented design of the '559 Patent.

81. The 5ml Thick Wall Jar has been and is offered for sale by Defendant on the Defendant's Websites under Defendant's part number EBJCR5 █████ ████████████████████████████████████████████ ████████████████ Defendant has filled orders for the 5ml Thick Wall Jar with the 5ml Infringing Jars instead.

82. No later than June 28, 2022, without Plaintiff's authorization or permission, Defendant filled orders it received for the 5ml Thick Wall Jar with 5ml Infringing Jars. The 5ml Infringing Jars from Defendant are virtually identical to Plaintiff's patented 5ml Thick Wall Jar, and to the embodiment of the '559 Patent, as shown below:

//
//
//
//
//
//

| '559 Patent | A&A Jar Sold as #EBJCR5 |
|---|---|
|  |  |
| FIG. 1 | |
|  |  |
| FIG. 2 | |

83.    The design of the 5ml Infringing Jar is substantially the same as the design claimed in the '559 Patent such that an ordinary observer would be deceived into thinking the 5ml Infringing Jar is the jar depicted in the '559 Patent.

84.    Defendant is now, and has been, directly infringing the '559 Patent in this District and elsewhere in the United States by, amongst other things, selling, offering to sell, making, importing, or using the 5ml Infringing Jar.

85.    Defendant has been on notice of its infringement of the '559 Patent since, at the latest February 22, 2024.

86.    Defendant undertook and continues its infringing actions despite an objectively high likelihood that such activities infringed the '559 Patent, which was duly issued by the USPTO, and is presumed valid. Defendant could not reasonably, subjectively believe that its actions do not constitute infringement of the '559 Patent. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Defendant have continued

its infringing activities. As such, Defendant willfully infringes the Plaintiff's Patents.

87.     As a direct and proximate result of its infringement of the '559 Patent, Plaintiff has been damaged, and Defendant have derived and received gains, profits, and advantages in an amount yet to be determined.

88.     Pursuant to 35 U.S.C. § 284, Plaintiff is entitled to damages for A&A's infringing acts of no less than a reasonably royalty and is entitled to and treble damages for willful infringement because this is an exceptional case.

89.     Pursuant to 35 U.S.C. § 289, Plaintiff is entitled to A&A's total profits from A&A's infringing sales.

90.     Pursuant to 35 U.S.C. § 285, Plaintiff is entitled to reasonable attorneys' fees.

91.     The infringement of the '559 Patent by Defendant have caused and will continue to cause Plaintiff irreparable harm unless preliminarily and permanently enjoined by the Court. Plaintiff has no adequate remedy at law.

## COUNT III

### (BREACH OF CONTRACT BY A&A)

92.     Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 91 as if fully set forth herein.

93.     The Agreement is a valid and enforceable contract.

94.     Plaintiff performed all its obligations under the Agreement, including ██████████████████████████████████████████████████████████ ███████.

95.     Under the Agreement, Defendant was to purchase Thick Wall Jars exclusively from Plaintiff.

96.     Defendant started offering for sale and continues to offer for sale Infringing Jars, which are substantially similar to the Thick Wall Jars, and which were not purchased from the Plaintiff in violation of the terms of the Agreement.

97.     Plaintiff has suffered damages from Defendant's breach of the Agreement, and sales of the Infringing Jars at lower prices than the Plaintiff's pricing for its Thick Wall Jars, in an amount to be determined at trial.

98.     Plaintiff has suffered and continues to suffer irreparable harm as a result of Defendant's breach, including but not limited to the loss of market share related to its supply of the Thick Wall Jars. Moreover, due to the Defendant's sale of the Infringing Jars at prices lower than Plaintiff's price for its Thick Wall Jars, Plaintiff has lost goodwill amongst distributors who are also being undercut by the low prices for the Infringing Jars sold by the Defendant.

99.     Plaintiff seeks and is entitled to an order enjoin the Defendant from selling the Infringing Jars in violation of the Agreement terms.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for relief as follows:

1.     A judgment that Defendant have infringed and are infringing one or more of the Plaintiff Patents;

2.     A judgment awarding Plaintiff compensatory damages because of Defendant's infringement of one or more of the Plaintiff's Patents, together with interest and costs, consistent with lost profits and in no event less than a reasonable royalty;

3.     A judgment awarding Plaintiff treble damages and pre-judgment interest under 35 U.S.C. § 284 as a result of Defendant's willful and deliberate infringement of one or more of the Plaintiff Patents;

4.     A judgment awarding Plaintiff damages in an amount adequate to compensate it for Defendant breach of the Agreement pursuant to California Civil Code § 3300.

5.     A judgement declaring that this case is exceptional and awarding to Plaintiff its attorneys' fees, expenses, and costs incurred in connection with this action under 5 U.S.C. §§ 284 and 285 and Rule 54(d) of the Federal Rules of Civil

Procedure;

6.    A grant of preliminary and permanent injunctions enjoining Defendant from any further acts of infringement of one or more of the Plaintiff's Patents, and/or selling the Infringing Jars in violation of the Agreement;

7.    An award of pre- and post-judgment interest of this action against Defendant; and

8.    Such other relief as the Court may deem just and proper.

## **JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Lerman Container Corp. demands a trial by jury on all facts so triable.

Respectfully submitted,

Dated:  July 10, 2025          WILLENKEN LLP


By: */s/ Jason H. Wilson*
     Jason H. Wilson
     Attorneys for Plaintiff
     LERMAN CONTAINER CORP.